# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| MICROAIRE SURGICAL INSTRUMENTS, LLC, | CASE NO. 3:09-cv-00078 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| ARTHREX, INC., | JUDGE NORMAN K. MOON |
| *Defendant.* | |

This matter is before the Court upon Defendant Arthrex, Inc.'s (hereinafter "Arthrex") "Motion to Dismiss German-Based Claims on Grounds of Forum Non-Conveniens," and its accompanying Declaration of Manuela Mönch, in Support of Arthrex, Inc.'s Motion to Dismiss Based on Forum Non-Conveniens, both filed March 31, 2010 (docket nos. 36 and 37), Plaintiff MicroAire Surgical Instruments, LLC's (hereinafter "MicroAire") "Opposition to Defendant's Motion to Dismiss So-Called 'German-Based Claims' on Grounds of *Forum Non Conveniens*," filed April 14, 2010 (docket no. 39), Arthrex's Reply to MicroAire's Response to Motion to Dismiss German-Based Claims on Grounds of Forum Non-Conveniens, filed April 26, 2010 (docket no. 41), and Arthrex's Declaration of Michael P. Kuhn, Esq., in Support of Arthrex, Inc.'s Motion to Dismiss Based on Forum Non-Conveniens, filed May 13, 2010 (docket no. 42).

After full consideration of the arguments set forth therein, as well as those presented at the June 17, 2010 hearing on the instant matter, for the following reasons, the Court will DENY Arthrex's Motion to Dismiss on Grounds of Forum Non-Conveniens, in an Order, to follow.

# I. BACKGROUND

MicroAire brought suit on November 12, 2009, alleging that Arthrex had infringed MicroAire's patent, United States Patent No. 5,306,284 (hereinafter "the '284 Patent"). The '284 Patent covers MicroAire's CTRS product, which is a surgical instrument used for endoscopic carpal tunnel release surgery. MicroAire alleges in this suit that Arthrex, a direct competitor in the market for endoscopic surgical devices, has brought the Centerline instrument to market, which infringes the '284 Patent and impermissibly incorporates certain proprietary design information. The design and manner of operation of MicroAire's CTRS instrument and Arthrex's Centerline instrument have already been detailed in the Court's Memorandum Opinion issued June 3, 2010 denying MicroAire's Motion for Preliminary Injunction (docket no. 46), and consequently, only such background as is pertinent to Arthrex's Motion to Dismiss will be recited below. In addition to MicroAire's federal claim of patent infringement under, *inter alia*, 35 U.S.C. § 281, MicroAire raised several state-law claims under Virginia law, namely tortious interference with contract under the Virginia common law, misappropriation of trade secrets under the Virginia Uniform Trade Secrets Act, Va. Code §§ 59.1-336 *et seq*. (hereinafter "VUTSA"), and business conspiracy under the Virginia Business Conspiracy Act, Va. Code §§ 18.2-499 *et seq*. (hereinafter "VBCA"). It is the latter three claims that are the subject of Arthrex's Motion to Dismiss, and will be referred to collectively as MicroAire's "non-federal claims."

While the parties to this dispute have a global presence in the market for surgical devices, they are based in the United States. MicroAire is a Delaware limited liability company, which has its principal place of business in Charlottesville, Virginia. Complaint, at ¶ 1. Colson Associates, Inc. (hereinafter "Colson"), a privately held Delaware corporation with its principal place of business in Chicago, Illinois, is the managing member of MicroAire. *Id*. Arthrex is a Delaware corporation with

its principal place of business in Naples, Florida, and which has subsidiaries located worldwide, including Austria, Belgium, France, the United Kingdom, and particularly relevant for the present purposes, Germany (hereinafter "Arthrex GmbH"). *See* Complaint, at ¶ 3; Amended Answer, at ¶ 3.

The claims that are the subject of this dispute arose from an incident in September 2009, when representatives of the parties were attending the annual meeting of the American Society for Surgery of the Hand in San Francisco.[1] At this meeting, an employee of MicroAire encountered a Mr. Thomas Aust (hereinafter "Aust") at a booth sponsored by Arthrex.

Until approximately 2008, Aust had worked for MicroAire as a Business Development Manager through a European affiliate of Colson,[2] and had been based in Germany while so employed. In this position, Aust was responsible for MicroAire's CTRS instrument and had access to proprietary information relating thereto. In the course of his employment with MicroAire, Aust entered into certain agreements that restricted his use of the company's proprietary information following the conclusion of his employment. Between December of 2007 and January of 2008, Aust was terminated from his position, under circumstances that resulted in a lawsuit by Aust against MicroAire in the German courts. This lawsuit concluded in June of 2008 when the German court entered an agreed settlement order, *see* docket no. 42, ex. F, pursuant to which Aust would receive his salary through July of 2008, subject to certain conditions, including a stipulation that Aust would not take employment with a competitor in the field of endoscopic carpal tunnel release through the end of that July.

---

[1] Unless otherwise stated, the background will be drawn from the Complaint, as on a motion to dismiss, the Court must take all well-pleaded material allegations in the Complaint as admitted, and view them in the light most favorable to the plaintiff. *See e.g.*, *Dunn v. Borta*, 369 F.3d 421, 423 n.1 (4th Cir. 2004) (citing *De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991)).

[2] The Court notes that while MicroAire alleged in its Complaint that Aust "had worked for MicroAire in Europe through a European affiliate of Colson Associates," Complaint, at ¶ 13, the actual employment agreement, which was included in the record by Arthrex and is of undisputed authenticity, *see* docket no. 42, ex. E, was between Aust, as the

At the meeting in San Francisco, Arthrex was promoting its new Centerline carpal tunnel release instrument. Aust, now an employee of Arthrex, permitted MicroAire's Senior Mechanical Design Engineer to inspect Arthrex's Centerline instrument. As a result of this inspection, it became clear to MicroAire's employee that the Centerline instrument infringed the patent for its CTRS instrument, *i.e.*, the '284 Patent. Soon after reaching this conclusion, MicroAire notified Arthrex in writing of its belief that there was infringement, and that Arthrex had acted tortiously in its hiring of Aust and unlawful misappropriation of MicroAire's proprietary information.

Presently before the Court is Arthrex's Motion to Dismiss the non-federal claims raised by MicroAire, on the grounds of *forum non conveniens*, specifically that the German courts would offer a more convenient forum for their adjudication. The Court heard oral argument on this Motion on June 17, and the matter being fully briefed, it is now ripe for disposition.

## II. APPLICABLE LAW

*Forum non conveniens* is a doctrine that has its roots in the common law, *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 200 (4th Cir. 2009), which permits a federal court, under certain circumstances, to dismiss an action because "a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425, 127 S.Ct. 1184 (2007). Indeed, the Supreme Court has made clear that the "central focus of the *forum non conveniens* inquiry is convenience." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 248, 102 S.Ct. 252 (1981).

When the Court conducts its inquiry into whether certain claims should be dismissed on *forum non conveniens* grounds, it must determine, as a threshold matter, "whether there exists an alternative forum" in which such claims can be heard. *Piper Aircraft*, 454 U.S. at 254 n. 22; *see also*

---

employee, and MicroAire Surgical Instruments, Inc., as the employer.

*Rankine v. Rankine*, 166 F.3d 333, 1998 WL 808203, at *1 (4th Cir. 1998) (table) (holding that the district court must determine, as a threshold matter, whether the proposed alternative forum is actually available). The burden is on the party seeking dismissal on *forum non conveniens* grounds to show that the proposed alternative forum is actually available. *See Kontoulas v. A.H. Robbins Co., Inc.*, 745 F.2d 312, 316 (4th Cir. 1984); *In re XE Servs. Alien Tort Litig.*, 665 F.Supp.2d 569, 602 (E.D. Va. 2009).

If this prerequisite is satisfied and an adequate alternative forum is found to be available, the Court must then weigh the public and private interest factors originally set forth in *Gulf Oil v. Gilbert*, 330 U.S. 501, 506-07, 67 S.Ct. 839 (1947). *See e.g.*, *Fidelity Bank PLC v. N. Fox Shipping N.V.*, 242 F. App'x 84, 90 (4th Cir. 2007); *Millennium Inorganic Chems. Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 686 F.Supp.2d 558, 561 (D. Md. 2010). The private interest factors that are potentially implicated in this case are: (1) the "relative ease of access to sources of proof;" (2) the "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses;" and (3) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *See Galustian v. Peter*, 591 F.3d 724, 732 n.7 (4th Cir. 2010) (quoting *Gilbert*, 330 U.S. at 508). The public interests factors potentially implicated in this case are: (1) the "administrative difficulties [which] follow for courts when litigation is piled up in congested centers instead of being handled at its origin;" (2) "jury duty [that] is a burden that ought not be imposed upon people of a community which has no relation to the litigation;" (3) the "local interest in having localized controversies decided at home," *id.* at 732 n.7 (quoting *Gilbert*, 330 U.S. at 508-09); and finally (4) "the interest in trying cases where the substantive law applies," *Compania Naviera*, 569 F.3d at 200 (citing *American Dredging Co. v. Miller*, 510 U.S. 443, 448, 114 S.Ct. 981 (1994)).

As the party seeking dismissal on *forum non conveniens* grounds has the burden of establishing that an adequate alternative forum is available in which the litigation could proceed, so too does this party bear the burden of establishing that the aforementioned factors weigh in favor of a *forum non conveniens* dismissal. "A defendant invoking *forum non conveniens* ordinarily bears *a heavy burden* in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430, 127 S.Ct. 1184 (2007) (emphasis added); *see also Eagle Paper Int'l, Inc. v. Expolink, Ltd.*, Civil Action No. 2:07-cv-160, 2008 WL 170506, at *7 (E.D. Va. Jan. 17, 2008) (same).

### III. DISCUSSION

#### A. ALTERNATE FORUM

Arthrex argues that there is an available and adequate alternative forum in the court system in Germany. *See* Motion to Dismiss, at 6-8. An alternative forum is considered "available" when the defendant is amenable to process in that jurisdiction, and is considered "adequate" if all parties can come within that forum's jurisdiction, and "the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Galustian*, 591 F.3d at 731. Notably, Arthrex has explicitly consented to the jurisdiction of the German courts, should MicroAire bring suit in that forum on its non-federal claims. *See* Motion to Dismiss, at 7. In this case, Arthrex's explicit and unequivocal consent to the jurisdiction of the German courts provides sufficient basis for this Court to find that the "availability requirement" has been satisfied. *See e.g.*, *Macedo v. Boeing Co.*, 693 F.2d 683, 687 (7th Cir. 1982) (supporting the proposition that defendant's consent to personal jurisdiction in foreign court satisfies the "availability requirement"); *Inverpan, S.A. v. Britten*, 646 F.Supp.2d 1354, 1357 (S.D. Fla. 2009); *Ludgate Ins. Co. Ltd. v. Becker*, 906 F.Supp. 1233, 1236 (N.D. Ill. 1995).

Arthrex also addresses whether the prospective forum in the German courts would satisfy the "adequacy requirement" in the Declaration of Michael P. Kuhn, an attorney at the law firm of Sands Anderson P.C. who is admitted as an attorney in Germany, New York and Virginia, and who specializes in employment law, business law and corporate law (hereinafter "Kuhn Declaration") (docket no. 42). In the opinion of Mr. Kuhn, who reviewed certain pertinent materials underlying MicroAire's non-federal claims against Arthrex, German law would provide a comparable cause of action for tortious interference with contract under the *Gesetz gegen den unlauteren Wettbewerb* (hereinafter "UWG") and the *Bürgerliches Gesetzbuch* (hereinafter "BGB") to that presently alleged under the Virginia common law, a comparable cause of action for business conspiracy under the UWG and the BGB to that presently alleged under the Virginia Business Conspiracy Act, and a comparable cause of action for misappropriation of trade secrets under the UWG and BGB to that presently alleged under the Virginia Uniform Trade Secrets Act. *See* Kuhn Declaration, at ¶¶ 7-12. MicroAire does not contest that Germany would provide either an "available" or an "adequate" forum in its brief in opposition, nor did it argue to the contrary at the June 17, 2010 hearing on the instant Motion to Dismiss. MicroAire had argued that Arthrex's prior analysis of German law as set forth in the Mönch Declaration was entitled to little deference by the Court because it was proffered by an in-house counsel at Arthrex's German affiliate. However, no comparable argument was raised with respect to the impartiality of Mr. Kuhn, nor did MicroAire contest Arthrex's underlying analysis of German law. Federal courts have found on numerous occasions that German courts provide ample redress for the resolution of civil disputes. *See e.g.*, *Fagan v. Deutsche Bundesbank*, 438 F.Supp.2d 376, 382-83 (S.D.N.Y. 2006); *NCA Holding Corp. v. Norddeutsche Landesbank Girozentrale*, No. 96 Civ. 9321, 1999 WL 39539, at *4 (S.D.N.Y. Jan. 28, 1999); *Jauss v. Lehman Bros., Inc.*, No. 94 Civ. 2921, 1995 WL 4023, at *3 (S.D.N.Y. Jan. 5, 1995). In light thereof, the

Court can, at present, discern no grounds for why the court system in Germany should not be considered an available and adequate alternative forum, and finds that it is such a forum for MicroAire's non-federal claims.

## B. Presumption

However, whether an available and adequate alternative forum can be found is merely the first step of the Court's inquiry. Arthrex, as the party moving for dismissal on *forum non conveniens* grounds, "bears a *heavy burden* in opposing the plaintiff's chosen forum," *Sinochem*, 549 U.S. at 430 (emphasis added), and "[u]nless the balance [of factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984) (citing *Gilbert*, 330 U.S. at 508).

The deference afforded to the plaintiff's choice of forum is not a constant, and necessarily depends upon the particular circumstances of the case at bar. The level of deference falls along something of a continuum, and varies based upon the plaintiff's relationship to the chosen forum, the nexus between the events giving rise to the causes of action and the chosen forum, evidence of tactical forum shopping, and other factors. On one end of this spectrum, a plaintiff's choice of forum is generally entitled to great deference when the choice has been to bring suit in his or its home forum, because it is presumed to be convenient. *See e.g.*, *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (en banc); *Lockwood Bros., Inc. v. Arnold Speditions GmbH*, 453 F.Supp.2d 928, 935 (E.D. Va. 2006); *Early v. Travel Leisure Concepts, Inc.*, 674 F.Supp. 1199, 1200 (E.D. Va. 1987). On the other end of the spectrum, when "a plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to such substantial weight." *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F.Supp.2d 517, 519 (E.D. Va. 1999) (citing *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F.Supp. 582, 589 (E.D. Va. 1992)).

MicroAire is a Delaware limited liability company having its principal place of business in Charlottesville, Virginia. As such, MicroAire has brought suit in its home forum, and this choice of forum is entitled to great or substantial deference and is presumed to be convenient. Moreover, the Court cannot ignore the fact that Arthrex, Inc., the sole defendant in this case, is a Delaware corporation with its principal place of business in Naples, Florida. While the residence of the parties is not dispositive in the Court's *forum non conveniens* inquiry, it is certainly "a significant factor." *See Manu Int'l S.A. v. Avon Prods., Inc.*, 641 F.2d 62, 67 (2d Cir. 1981). MicroAire has not filed suit against Arthrex GmbH, the Defendant's German subsidiary, nor has it done so against Aust, who lives and works in Germany. However, MicroAire is the proverbial "master of its complaint," and was entitled to limit its causes of action against, and its relief sought from, Arthrex, Inc.

## C. PRIVATE INTEREST FACTORS

The first private interest factor cited in *Gilbert* is the "relative ease of access to sources of proof." *Gilbert*, 330 U.S. at 508. Arthrex argues that as Aust is employed by Arthrex GmbH, and was previously employed by Colson in Germany, "many of the documents and other physical evidence that would be discoverable in this case will be located in Germany," and could entail additional complications if held by a third party. *See* Motion to Dismiss, at 11. As a global response, MicroAire argues there is no dispute that Aust was in the United States in connection with at least several of the allegations set forth in the Complaint, *i.e.*, attendance on behalf of Arthrex at the San Francisco trade show. *See* MicroAire's Opposition to Motion to Dismiss, at 9. Furthermore, in discovery, Arthrex had previously identified only three individuals "who participated in the design and development of the Centerline product," who were Mihaela Morar and Jerome Gulvas (both based in Naples, Florida), and Dr. Steven M. Topper (based in Colorado Springs, Colorado). *See*

Arthrex, Inc.'s Objections and Responses to MicroAire's First Set of Interrogatories, at 11 (docket no. 39, ex. A).

Based upon the factual allegations underlying MicroAire's non-federal claims, certainly documents and evidence relevant to the circumstances surrounding Aust's employment with Arthrex (or its subsidiary Arthrex GmbH), as well as whether there was any unlawful communication of MicroAire's trade secrets or proprietary information to Arthrex (or its subsidiary Arthrex GmbH), will be located in Germany. However, this is not a case where the only evidence relevant to certain claims is located overseas. *See e.g.*, *Reers v. Deutsche Bahn AG*, 320 F.Supp.2d 140, 161 (S.D.N.Y. 2004) (noting, in support of a *forum non conveniens* dismissal, that "not a single fact witness or piece of documentary evidence relevant to the complaint's allegations of tortious conduct is located in the United States"). Indeed, according to Arthrex, those three persons responsible for the "design and development" of the Centerline instrument are located in the United States, namely Florida and Colorado. Documents and evidence related to the "design and development" of the Centerline instrument located in Florida and Colorado may reveal whether Aust communicated with those responsible for the development of the Centerline instrument, or whether they had access to MicroAire's confidential or proprietary information. These factual issues, among others, materially relate to MicroAire's claims that (1) Arthrex disrupted the contractual relationship between MicroAire and Aust prohibiting the use of MicroAire's proprietary information after his employment was terminated, *see* Complaint, at ¶ 45; (2) Arthrex misappropriated trade secrets belonging to MicroAire and used them in the design of its Centerline instrument, *see* Complaint, at ¶ 63; and (3) Arthrex conspired with Aust to acquire MicroAire's proprietary information and incorporate it into its Centerline instrument, *see* Complaint, at ¶¶ 72, 73. If the Court were simply to look at MicroAire's Complaint in consideration of this *Gilbert* factor, it would appear that the bulk

of the sources of proof would be located in Germany. However, in light of Arthrex's response concerning the location of the "design and development" of its Centerline instrument, this factor no longer weighs in favor of dismissal.

The Court is also cognizant that the "ease of access to sources of proof" entails consideration of whether documents are in another language and would have to be translated. *See e.g.*, *Mirian Ramírez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc.*, 448 F.Supp.2d 520, 529 (S.D.N.Y. 2006). While Arthrex has argued that translation of documentary evidence pertaining to MicroAire's non-federal claims from German to English weighs in favor of dismissal, *see* Motion to Dismiss, at 11, it has not supported these arguments with any explanation as to the scope or volume of potentially discoverable information, and how the accompanying translation costs would be burdensome to Arthrex. *See e.g. Traver v. Officine Meccaniche Toshci, SpA*, 233 F.Supp.2d 404, 416 (N.D.N.Y. 2002) (finding that the defendant failed to meet its burden that the *Gilbert* factors weighed in favor of dismissal where it "ha[d] not explained how transporting documents from Italy, and even translating those documents, would be oppressive or vexatious"); *Gupta v. Austrian Airlines*, 211 F.Supp.2d 1078, 1088 (N.D. Ill. 2002) (finding that defendants failed to show this factor weighed in favor of dismissal where they "furnish[ed] no details regarding the quantity or relevancy of documents and testimony needing translation into English"). As Arthrex bears the burden of establishing that the public and private interest factors weigh in favor of a *forum non conveniens* dismissal, its bare assertion that documents will require translation, without support as to burdensome this translation will be, does not persuade the Court that this factor weighs in favor of dismissal.

The second private interest factor is the "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses." *Gilbert*, 330 U.S. at 508.

The Court acknowledges that it does not have compulsory process over certain witnesses who live and reside overseas, which is a factor that generally weighs in favor of dismissal. These potential witnesses at least include Mr. Aust, who is the focal point of MicroAire's non-federal claims, as well as certain individuals whom Arthrex alleges have knowledge of the circumstances of Aust's employment with Arthrex, who include Stefan Grupp, Managing Director, Hubert Merges, Director of Sales, and Alwin Bobsin, Human Resources, all of whom who live and work in Germany at Arthrex GmbH. *See* Motion to Dismiss, at 9. Arthrex also asserts that it is "questionable whether any foreign-based third party witnesses and foreign employees of Colson Associates, the company that apparently hired Mr. Aust, as well as other non-party witnesses, will even be accessible to testify at trial in Virginia, or could be compelled to appear for deposition in Germany." *Id.* at 10.

While Arthrex is quite right to point out that these witnesses may well be beyond the Court's subpoena power, it has failed to carry its burden that this factor weighs in favor of dismissal in light of the record presently before the Court. Arthrex has not produced any evidence supporting the proposition that any of the aforementioned individuals would only be willing to testify, or be deposed, pursuant to the Court's compulsory process. *See e.g. Litton v. Avomex, Inc.*, No. 08-CV-1340, 2010 WL 160121, at *18 (N.D.N.Y. Jan. 14, 2010) (finding, with respect to a motion to transfer pursuant to 28 U.S.C. § 1404(a), that where "the parties do not identify witnesses that would be unwilling to testify and do not establish that compulsory process will be necessary," the "availability of process" factor is "neutral in the Court's analysis"); *Clark v. Bucyrus Int'l*, 634 F.Supp.2d 814, 820 (E.D. Ky. 2009) (finding that where the defendants "have failed to allege, much less carried their burden to show, that any witness would be unwilling to testify and that compulsory process would be required," the court would not "attach much weight to the compulsory process factor"); *First Union Nat'l Bank v. Paribas*, 135 F.Supp.2d 443, 449 (S.D.N.Y. 2001); *Manela v.*

*Garantia Banking Ltd.*, 940 F.Supp. 584, 592 (S.D.N.Y. 1996) ("Defendants bear the burden on their motion to dismiss, and they have failed to produce evidence, or even to allege, that [a potential witness in Brazil] would be unwilling to testify in New York.").

More importantly, the Court does not anticipate that compulsory process will be necessary to secure their attendance at trial, or to promptly and efficiently secure all necessary depositions overseas, given the fact that all potential witnesses identified for the Court are employed either by the corporate subsidiary of the Defendant Arthrex, Inc., *i.e.*, Arthrex GmbH, or by the managing member of the Plaintiff MicroAire Surgical Instruments, Inc., *i.e.*, Colson Associates.[3] *See Symbol Techs., Inc. v. Metrologic Instruments, Inc.*, 450 F.Supp.2d 676, 679 (E.D. Tex. 2006) ("Although Metrologic has not specified why the testimony of an Omniplanar employee may be necessary at trial, as a subsidiary of Metrologic, the Court does not anticipate that compulsory process will be necessary to compel the attendance of any necessary Omniplanar witnesses."). To the extent that there are true third parties that are unwilling witnesses (a proposition that has not been established by Arthrex), deposition testimony could be obtained by compulsory process issued by a German court pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, *opened for signature*, Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444 (hereinafter "the Hague Evidence Convention"), to which both the United States and Germany are parties.

---

[3] While the record at present does not provide any basis for belief that the parties will be unable to promptly and efficiently secure the attendance of all necessary employees of Arthrex GmbH and Colson Associates as witnesses at trial, or alternatively to secure their depositions overseas, or to secure any and all documents responsive to valid discovery requests, the Court notes that certain circumstances may "suggest a sufficiently intimate relationship between subsidiary and parent to justify disregarding the formal corporate separation for the limited purpose of civil discovery." *Ferber v. Sharp Electronics Corp.*, No. 84 Civ. 3105, 1984 WL 912479, at *2 (S.D.N.Y. Nov. 28, 1984). *See also Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 129 (D. Del. 1986) ("If a party has control over or shares control of documents with a third person, then a court can order production by means of its power over the party litigant."); *Hubbard v. Rubbermaid, Inc.*, 78 F.R.D. 631, 637 (D. Md. 1978) (stating that "the nonparty status of [ ] wholly owned subsidiaries does not shield their documents from production").

Accordingly, the availability of compulsory process is a factor which does not, at this time, weigh in favor of dismissal.

However, on the issue of the cost and expense of obtaining willing witnesses, this is factor that weighs in favor of dismissal. Of those potential witnesses identified by the parties with respect to MicroAire's non-federal claims, a greater number are to be found closer to a German forum, than to the Western District of Virginia. Although Arthrex's employees who developed the Centerline instrument live in Florida and Colorado and would be more greatly inconvenienced by travelling to Germany than this Court, Arthrex has argued that a German forum would be more convenient for it, and the Court will defer to that assertion with respect to the cost and convenience of its own employees. *See Johnson v. CSX Transp., Inc.*, No. 7:06-cv-00130, 2006 WL 2037570, at *3 – *4 (W.D. Va. July 18, 2006) (finding the court's decision to transfer pursuant to 28 U.S.C. § 1404(a) supported by the fact that many witnesses were defendant's employees, and that defendant indicated witness attendance at another forum would be a lesser inconvenience). Given that seven potential witnesses all of whom are employees of Arthrex and its subsidiaries have been identified for the Court at present, and three of whom reside in the United States, *i.e.*, Mihaela Morar, Jerome Gulvas, and Dr. Steven M. Topper, while four of whom reside in Germany, *i.e.*, Mr. Aust, Stefan Grupp, Hubert Merges, and Alwin Bobsin, this factor does not strongly weigh in favor of dismissal.

Therefore, after an analysis of the pertinent private interest factors set forth in *Gilbert*, the Court finds that Arthrex has not met its burden of proving that the "ease of access to the sources of proof" factor, or the "availability of compulsory process" factor, weigh in favor of dismissal. The Court, however, defers to Arthrex's assertion that collectively it would be a lesser inconvenience for its employees to testify in Germany rather than in the Western District of Virginia, and therefore this factor weighs slightly in favor of dismissal.

D. PUBLIC INTEREST FACTORS

The public interest factor most greatly contested is "the interest in trying cases where the substantive law applies," *Compania Naviera*, 569 F.3d at 200 (citing *American Dredging*, 510 U.S. at 448), and there is a question in this case about whether state law (be it that of Virginia, or another applicable state) or German law would apply to MicroAire's non-federal claims.

While the Court finds Arthrex's general analysis of the choice of law rules to be persuasive, there are simply not enough facts on the record supporting its position for the Court to find that German law would govern MicroAire's non-federal claims. At root, the parties are asking the Court to speculate about where any alleged injury would have occurred. Notably in Arthrex's favor are the facts that Aust has always been employed in Germany, and that all contracts potentially implicated by the non-federal claims, being the employment agreement, confidentiality agreement, and settlement agreement between MicroAire and Aust, were all undeniably drafted, executed, and predominantly to be performed in Germany. Notably in MicroAire's favor is the fact that Arthrex only identified three individuals "who participated in the design and development of the Centerline product," and these persons are located in Florida and Colorado.

As a district court sitting in Virginia, the Court must apply Virginia's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020 (1941). In tort actions, Virginia applies the *lex loci delicti*, or the law of the place of the wrong. *See e.g.*, *Milton v. ITT Research Inst.*, 138 F.3d 519, 521 (4th Cir. 1998) (citing cases). The Court therefore applies "the law of the state in which the *wrongful act* took place, wherever the effects of that act are felt." *Milton*, 138 F.3d at 522 (emphasis added).

Under the Uniform Trade Secrets Act, which has been adopted in Virginia, Florida and Colorado, the term "misappropriation" can mean either the "*disclosure* or *use* of a trade secret of

another without express or implied consent." Va. Code § 59.1-336 (emphasis added). In the event that Arthrex has, as alleged, misappropriated trade secrets belonging to MicroAire, *see* Complaint, at ¶ 63, it appears that based upon Arthrex's own discovery responses, any such trade secrets would have been *used* in Florida and/or Colorado (where the Centerline instrument was designed and developed), and therefore the wrongful act of "misappropriation" could have taken place in those jurisdictions.

It appears more likely that German law would govern MicroAire's claims of business conspiracy and tortious interference with contract than its claim of misappropriation of trade secrets, although the Court is not called upon to definitely decide choice of law questions at this time. With respect to MicroAire's allegation of business conspiracy, at least in Virginia, a cause of action arises where "two or more persons intentionally and without legal justification, 'combine, associate, agree, mutually undertake or concert together' for the purpose of injuring plaintiff's business and, as a result of that conspiracy, plaintiff suffered financial harm." *Int'l Paper Co. v. Gilliam*, No. CL03-496, 2003 WL 23573613, at *5 (Va. Cir. Ct. Dec. 23, 2003) (citing *Williams v. Dominion Tech. Partners*, 576 S.E.2d 752, 758, 265 Va. 280 (2003)). With respect to MicroAire's allegation of tortious interference with contract, at least in Virginia, a cause of action arises where there is "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Duggin v. Adams*, 360 S.E.2d 832, 835, 234 Va. 221 (1987). As Kuhn and his direct employer, Arthrex GmbH, have been at all times located in Germany, it is more likely that any such alleged agreement to injure MicroAire's business, and any intentional interference inducing a breach or termination of a prior contractual relationship,

would have occurred in Germany. However, again, all of the non-federal claims concern allegedly tortious conduct committed by Arthrex, Inc., and all have as their factual predicate the allegedly unlawful transfer of confidential and proprietary information from MicroAire to Arthrex. Given Arthrex's discovery response only identifying three individuals "who participated in the design and development of the Centerline product," and given that these persons are located in Florida and Colorado, the Court cannot rule out the possibility that the place of the wrong with respect to these two torts was, in fact, Florida or Colorado, and not Germany.

Therefore, it would be premature for the Court to make a determination as to what law governs MicroAire's non-federal claims at present, nor is such a ruling sought by the parties at this juncture. What can be said is that there is "some likelihood" that the Court would be required to apply German law to several of MicroAire's non-federal claims, which is "a factor that cuts to some degree in defendant['s] favor." *First Union*, 135 F.Supp.2d at 453. Arthrex has not established to the satisfaction of the Court, in light of its own discovery responses, that it is likely that German law would govern all of MicroAire's non-federal claims. And it is certainly the case that not all claims presently pending between MicroAire and Arthrex could be governed by German law, given MicroAire's federal claim of patent infringement in Count One of the Complaint. Undeniably, while the potential application of foreign law is a factor that weighs in favor of dismissal, the application of foreign law is still a task that the courts are competent, and often called-upon, to perform. *See e.g.*, *Boosey & Hawkes Music Publrs., Ltd. v. Walt Disney Co.*, 145 F.3d 481, 492 (2d Cir. 1998) (stating that "[w]hile reluctance to apply foreign law is a valid factor favoring dismissal under *Gilbert*, standing alone it does not justify dismissal"); *Manu Int'l*, 641 F.2d at 68 (stating that a

"federal court must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform").[4]

Arthrex also argues that two related public interest factors weigh in favor of dismissal, which are the "burden [of jury duty] that ought not to be imposed upon the people of a community which has no relation to the litigation," and the "local interest in having localized controversies decided at home." *Gilbert*, 330 U.S. at 508-09. This is not a case where the people of the Western District of Virginia have no relation to the litigation. This is a dispute between MicroAire, which is a company with its principal place of business in Charlottesville, Virginia, and Arthrex, a company that regularly does and solicits business in the Western District of Virginia, and derives substantial revenue therefrom. *See* Complaint, at ¶¶ 9 – 11; Amended Answer and Affirmative Defenses, at ¶¶ 9 – 11. Although many of the facts underlying the dispute occurred in another country, the relation of the parties to the plaintiff's chosen forum undoubtedly bears on these two *Gilbert* factors. *See e.g.*, *Buckley v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 4:09CV692, 2009 WL 3531647, at *7 (E.D. Mo. Oct. 27, 2009) (finding, although the underlying injury occurred abroad, that the Missouri federal court had local interests where both parties were United States citizens, the plaintiff was a resident of Missouri, and the only alternative forum was outside the United States); *Seales v. Panamanian Aviation Co. Ltd.*, No. CV-07-2901, 2008 WL 544705, at *6 (E.D.N.Y. Feb. 26, 2008) (finding, where plaintiff was a resident of Brooklyn, that the "forum has a connection to the litigation," and that as such, "jury duty [was] not an imposition on the residents of the district"); *Clough v. Perenco, L.L.C.*, Civil Action No. H-05-3713, 2007 WL 2409357, at *5 (S.D. Tex. Aug.

---

[4] While the Court is appreciative of the voluminous submissions of German law filed by Arthrex in connection with its Motion to Dismiss, *see* docket no. 37, ex. B-1 – B-18, and docket no. 42, ex. B, it is manifestly unclear why consideration of such documentation should be required when Arthrex's own expert, Mr. Kuhn, relied only upon approximately ten pages of statutory text of German statutes in rendering his opinion that German law provides comparable causes of action to MicroAire's non-federal claims, as presently alleged. *See* Kuhn Declaration, at 3-5.

21, 2007) (stating that where a dispute was only involved "a Texas resident and a company with systematic and continuous contacts with Texas," there "exists more than a limited nexus to Texas").

Therefore, while the Court is persuaded that Germany would possess an interest in having MicroAire's non-federal claims adjudicated in a German forum (due to the location of several potential witnesses, the potential application of German law, and the existence of the settlement agreement resolving employment disputes between MicroAire and Aust in the German courts), and that the nexus of the controversy to Germany is greater than its nexus to Virginia, there is a local interest in providing a forum for a company with its principal place of business in Charlottesville. Accordingly, the Court finds that the factor concerning juror burden is neutral, while the factor concerning the "local interest in having localized controversies decided at home" weighs in favor of dismissal.

Finally, MicroAire argues that the "dismissal of the non-patent claims would not serve judicial economy, because the non-patent claims are closely intertwined with the patent infringement claim, and with each other." MicroAire's Opposition to Motion to Dismiss, at 10. The Court is in agreement. While the precise elements for MicroAire to establish a *prima facie* case as to its non-federal claims will likely vary – especially considering the present uncertainty as to governing substantive law – the factual predicate underlying each of these claims substantially overlaps, if it cannot be considered identical. Furthermore, the circumstances under which Aust was employed by Arthrex or Arthrex GmbH, and whether there was any unlawful accompanying communication of MicroAire's proprietary information, are more than relevant to MicroAire's federal patent infringement claim. These and other facts underlying Arthrex's alleged infringement are material, as MicroAire has argued, at least with respect to its allegation that such infringement was "wilful,

wanton, and malicious and meets the standards for treatment as an exceptional case under the Patent Act, *see* Complaint, at ¶ 31, and its accompanying request for treble damages.

Finally, the Court notes that it appears to be fairly common practice for courts to hear state law tort claims that accompany a federal patent infringement claim. *See e.g.*, *Cerner Corp. v. Visicu, Inc.*, 667 F.Supp.2d 1062 (W.D. Mo. 2009) (considering accompanying claims of trade secret misappropriation, breach of contract, unfair competition, injurious falsehood, and tortious interference with contract and business expectancy); *Rainworks Ltd. v. Mill-Rose Co.*, 622 F.Supp.2d 650 (N.D. Ohio 2009) (considering, *inter alia*, accompanying claims of breach of contract and tortious interference with contract claims); *Hutchins v. Cardiac Science, Inc.*, 491 F.Supp.2d 136 (D. Mass. 2007) (considering accompanying tortious interference with contract and abuse of process claims); *A.K. Stamping Co., Inc. v. Instrument Specialities Co., Inc.*, 106 F.Supp.2d 627 (D.N.J. 2000) (considering accompanying unfair competition and tortious interference with contract claims).

Given the close, if not identical, subject matter underlying each of MicroAire's non-federal claims, and given the relevance thereto of said subject matter to certain issues in MicroAire's federal patent infringement claim, *e.g.*, the potential award of treble damages, Arthrex has not met its burden of establishing that considerations of judicial economy warrant dismissal.

In sum, while the German courts would provide an available and adequate alternative forum for the adjudication of MicroAire's non-federal claims, Arthrex bears not only a "heavy burden" in opposing MicroAire's chosen forum, *Sinochem*, 549 U.S. at 530, but further, the Court must afford "great deference" in the chosen forum, as MicroAire brought suit in its home forum, *see e.g.*, *Iragorri*, 274 F.3d at 71. Arthrex has established that several of the *Gilbert* factors weigh in favor of a dismissal on grounds of *forum non conveniens*, namely with respect to the convenience and

expense of bringing identified witnesses (who are mostly Arthrex employees) to a German forum as opposed to this Court, the likelihood that this Court would be obliged to apply German law to these claims, and the fact that the factual nexus underlying these claims appears to be greater with Germany than with the Western District of Virginia. However, the convenience and expense of witnesses factor did not weigh strongly in favor of dismissal, considering the number and importance of those witnesses residing in the United States. Neither did the application of foreign law factor weigh strongly in favor of dismissal, given lingering factual questions as to the substantive law governing MicroAire's non-federal claims. Furthermore, Arthrex failed to establish to the satisfaction of the Court that several other *Gilbert* factors weighed in favor of dismissal, including the relative ease of access to the sources of proof, and the availability of compulsory process.

At its essence, this dispute is between only one plaintiff, who is a citizen of Delaware and Virginia, and only one defendant, who is a citizen of Delaware and Florida. The defendant attempts to have this Court dismiss several, but not all, of plaintiff's claims, so they can be adjudicated in Germany, recognizing that its patent infringement claim would proceed here. The non-federal claims concern the same instruments as those at issue in the patent infringement claim, and concern the facts and circumstances that underlie the allegedly infringing activity by the defendant. The parties have not identified for the Court any analogous cases where a federal district court was inclined to dismiss equivalent claims on grounds of *forum non conveniens*, nor has the Court been able to uncover any. Arthrex has not, therefore, met its burden of persuasion that the *Gilbert* factors so clearly point to the convenience of a German forum that they outweigh the presumption in favor of MicroAire's chosen forum.

## IV. CONCLUSION

Accordingly, for the aforementioned reasons, the Court will DENY Arthrex's Motion to Dismiss on Grounds of Forum Non-Conveniens, in an accompanying Order, to follow.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 13th day of July, 2010.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE